UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SUMMIT CARBON SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KOSSUTH COUNTY, IOWA; KOSSUTH COUNTY BOARD OF SUPERVISORS; CARTER NATH, in his official capacity as a Kossuth County Supervisor; JACK PLATHE, in his official capacity as a Kossuth County Supervisor; JOSHUA WAECHTER, in his official capacity as a Kossuth County Supervisor; KYLE STECKER, in his official capacity as a Kossuth County Supervisor; and ROGER TJARKS, in his official capacity as a Kossuth County Supervisor,<br><br>Defendants. | No. 3:24-cv-00003<br><br>**COMPLAINT** |

## **INTRODUCTION**

1. The Eighth Circuit has repeatedly held that federal law preempts state and local government efforts to impose their own safety-related standards on interstate pipelines. *See ANR Pipeline Co. v. Iowa State Com. Comm'n*, 828 F.2d 465 (8th Cir. 1987); *Kinley Corp. v. Iowa Utils. Bd.*, 999 F.2d 354 (8th Cir. 1993); *cf. N. Nat. Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817 (8th Cir. 2004). And Iowa Code Chapter 479B governs hazardous liquid pipeline siting, routing, and permitting, which means that local regulations and ordinances that conflict with or are irreconcilable with these standards are preempted under Iowa law. *See Goodell v. Humboldt County*, 575 N.W.2d 486, 500–01 (Iowa 1998).

2. Just this month, the District Court for the Southern District of Iowa invalidated two other counties' efforts to regulate $CO_2$ pipelines. *See Summit Carbon Solutions, LLC v. Shelby County, Iowa et al.*, No. 1:22-cv-20, Dkt. 82 (S.D. Iowa Dec. 4, 2023); *Couser et al. v. Story County, Iowa et al.*, No. 4:22-cv-383, Dkt. 55 (S.D. Iowa Dec. 4, 2023).

3. Yet Kossuth County still seeks to impose its own standards on an interstate pipeline project. Like Shelby County's and Story County's ordinances, Kossuth County's effort is preempted, invalid, and unenforceable.

4. Plaintiff Summit Carbon Solutions, LLC brings this action seeking declaratory and injunctive relief against the enforcement of Kossuth County's ordinance concerning pipeline permitting and safety. The ordinance violates and is preempted by Iowa Code Chapter 479B and regulations thereunder, the federal Pipeline Safety Act, and the Supremacy Clause of the U.S. Constitution because it impermissibly regulates permitting, location, and safety aspects of Summit's planned interstate carbon dioxide pipeline.

## PARTIES

5. Plaintiff Summit Carbon Solutions, LLC is a limited liability company organized under Delaware law with its principal place of business in Ames, Iowa. Summit Carbon Solutions, LLC is authorized and in good standing to transact business in Iowa.

6. Defendant Kossuth County, Iowa is a county and body corporate under the laws of Iowa.

7. Defendant Kossuth County Board of Supervisors is the board of supervisors and governing body for Kossuth County under the laws of Iowa.

8. Defendant Carter Nath is a supervisor on the Kossuth County Board of Supervisors and is a resident of Iowa. Mr. Nath is sued only in his official capacity as a Kossuth County Supervisor.

9. Defendant Jack Plathe is a supervisor on the Kossuth County Board of Supervisors and is a resident of Iowa. Mr. Plathe is sued only in his official capacity as a Kossuth County Supervisor.

10. Defendant Joshua Waechter is a supervisor on the Kossuth County Board of Supervisors and is a resident of Iowa. Mr. Waechter is sued only in his official capacity as a Kossuth County Supervisor.

11. Defendant Kyle Stecker is a supervisor on the Kossuth County Board of Supervisors and is a resident of Iowa. Mr. Stecker is sued only in his official capacity as a Kossuth County Supervisor.

12. Defendant Roger Tjarks is a supervisor on the Kossuth County Board of Supervisors and is a resident of Iowa. Mr. Tjarks is sued only in his official capacity as a Kossuth County Supervisor.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Count I under 28 U.S.C. § 1331 because Summit's claim arises under federal law, including the Supremacy Clause, U.S. Const. art. VI, cl. 2.

14. This Court has supplemental jurisdiction over Count II under 28 U.S.C. § 1367(a).

15. This Court is authorized to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and Federal Rules of Civil Procedure 57 and 65.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all Defendants reside in this district and a substantial part of the events giving rise to Summit's claims occurred in this district.

## FACTUAL ALLEGATIONS

**Corn, Ethanol, and Carbon Dioxide in Iowa**

17. Corn is one of Iowa's top commodities by volume and the State's most valuable agricultural commodity. In 2022, Iowa produced corn worth more than $16.8 billion—which was $8.4 billion more than the State's next most valuable crop (soybeans).[1]

18. More than half of all corn harvested in Iowa goes to ethanol production. In fact, Iowa leads the nation in ethanol production with 57% of the corn grown in Iowa going to create nearly 27% of all American ethanol, more than any other state.[2] In 2019, for example, the State produced 2.58 billion bushels of corn, 1.5 billion of which were used in ethanol production.[3] In 2022, again more than half of the corn produced in Iowa was used to produce ethanol.[4]

19. Corn's value in Iowa—and throughout the Nation—is inextricably tied to ethanol production.

20. Carbon dioxide ($CO_2$) is a byproduct of the fermentation process of producing ethanol from corn. $CO_2$ is not only a byproduct of ethanol plants but also a byproduct of numerous other manufacturing processes, including fertilizer ammonia production.

21. $CO_2$ is a greenhouse gas that poses environmental concerns if released into the atmosphere in large quantities.

---

[1] *See 2022 State Agriculture Overview*, U.S. Dep't of Agric., https://www.nass.usda.gov/Quick_Stats/Ag_Overview/stateOverview.php?state=IOWA (last visited Jan. 1, 2024).
[2] *Corn Facts*, Iowa Corn Growers Ass'n, https://www.iowacorn.org/media-page/corn-facts#:~:text=Iowa%20leads%20the%20nation%20in,percent%20of%20all%20American%20ethanol (last visited Jan. 1, 2024) ("Iowa leads the nation in ethanol production, with 57 percent (1.5 billion bushels) of the corn grown in Iowa going to create nearly 27 percent of all American ethanol.").
[3] *See id.*
[4] *See* Jared Strong, *Iowa's Ethanol Production Sets New Record, Group Says*, Farm & Ranch (Feb. 21, 2023) https://agupdate.com/farmandranchnetwork/news/state-and-regional/iowa-s-ethanol-production-sets-new-record-group-says/article_4e09e4ee-b224-11ed-b9db-c3c26c684d2e.html.

22. Carbon capture and sequestration (CCS) is a process by which $CO_2$ is captured at the point of generation, transported, and then safely stored. CCS technology reduces greenhouse gas emissions by preventing the release of $CO_2$ into the atmosphere.

23. Carbon intensity measures the amount of carbon emitted per unit of energy consumed. Lower carbon emissions during fuel production result in a lower carbon intensity for that fuel.

24. The value of ethanol, and thus the price of corn, is affected by state and foreign regulations that target carbon $CO_2$ emissions.

25. Canada, for example, is a primary importer of ethanol from the United States, and Iowa is one of the main sources of U.S. ethanol exports to Canada. In 2021, Canada imported approximately $1.53 billion of U.S. ethanol fuel—a 94% percent increase over the past ten years.[5]

26. Canada's increased demand for ethanol comes in part from recently enacted energy regulations that incentivize the production, sale, and use of low carbon intensity fuels. Canada's Clean Fuel Regulations (CFR), which became law in July 2022, imposes a comprehensive set of fuel standards, including requirements that fuel suppliers progressively reduce the carbon intensity of fuels sold in Canada. The CFR aims for a 15% decrease in the carbon intensity of gasoline and diesel used in Canada by 2030.[6]

27. Energy regulations target carbon emissions in the United States too, increasing in-state demand for low carbon intensity fuels. California, for example, has adopted the Low Carbon

---

[5] *See Canada: U.S. Trade with Canada in 2022*, U.S. Dep't of Agric., https://www.fas.usda.gov/regions/canada (last visited Jan. 1, 2024).

[6] *See, e.g.*, *What are the Clean Fuel Regulations?*, Gov't of Canada, https://www.canada.ca/en/environment-climate-change/services/managing-pollution/energy-production/fuel-regulations/clean-fuel-regulations/about.html (last updated July 7, 2022); *Compliance with the Clean Fuel Regulations*, Gov't of Canada, https://www.canada.ca/en/environment-climate-change/services/managing-pollution/energy-production/fuel-regulations/clean-fuel-regulations/compliance.html (last updated June 22, 2023).

Fuel Standard (LCFS), which requires ongoing reductions in the carbon intensity of fuels sold in the State.[7] The LCFS considers emissions associated with the complete life cycle of fuel—from production to transportation to consumption. Under the LCFS, providers of low carbon intensity fuels generate credits. The value of those credits for ethanol plants has historically varied from $50–$200 per ton of $CO_2$ depending on demand.[8] And the California Air Resources Board recognizes CCS as "a necessary tool to reduce [greenhouse gas] emissions and mitigate climate change."[9]

28. Oregon has adopted a similar approach.[10] Under its Clean Fuels Program, the State is targeting a 10% reduction in average carbon intensity from 2015 levels by 2025, a 20% percent reduction by 2030, and a 37% reduction by 2035.[11] Fuel providers and importers must show that the volume and fuel supplied meet annual standards. And businesses can generate credits for fuels that exceed those standards.

29. Other states have enacted similar low-carbon initiatives and regulations.

30. The value of Iowa ethanol production, and the value of corn in Iowa—and throughout the Nation—depends on, and will increasingly depend on, carbon-reduction efforts of Iowa ethanol facilities.

---

[7] *See, e.g.*, *Low Carbon Fuel Standard*, Cal. Air Res. Bd., https://ww2.arb.ca.gov/our-work/programs/low-carbon-fuel-standard (last visited Jan. 1, 2024).
[8] *See California Low Carbon Fuel Standard Credit Price*, Neste, https://www.neste.com/investors/market-data/lcfs-credit-price (last visited Jan. 1, 2024).
[9] *2022 Scoping Plan for Achieving Carbon Neutrality*, Cal. Air Res. Bd. (Dec. 2022), p. 84, https://ww2.arb.ca.gov/sites/default/files/2023-04/2022-sp.pdf.
[10] *See, e.g.*, *Clean Fuels Program Overview*, Oregon.gov, https://www.oregon.gov/deq/ghgp/cfp/Pages/CFP-Overview.aspx (last visited Jan. 1, 2024).
[11] *Clean Fuels Program Overview*, Oregon.gov, https://www.oregon.gov/deq/ghgp/cfp/Pages/CFP-Overview.aspx (last visited Jan. 1, 2024).

**Summit's $CO_2$ Pipeline**

31. Summit is developing an interstate $CO_2$ pipeline project to facilitate CCS technology. When completed, the pipeline will transport $CO_2$ captured from more than 30 facilities (primarily ethanol plants but also some fertilizer plants and potentially other $CO_2$ emitters) across South Dakota, North Dakota, Iowa, Minnesota, and Nebraska. The pipeline system will transport the $CO_2$ through a network of more than 2,000 miles of underground pipes across those five states and deliver it to geologically appropriate sequestration sites in North Dakota.

32. In Iowa, the pipeline project is projected to involve more than 700 miles of pipeline, transporting $CO_2$ from both out-of-state and in-state facilities.

33. The pipeline will travel through 30 counties in Iowa: Boone, Cerro Gordo, Cherokee, Chickasaw, Clay, Crawford, Dickinson, Emmet, Floyd, Franklin, Fremont, Greene, Hancock, Hardin, Ida, Kossuth, Lyon, Mitchell, Montgomery, O'Brien, Page, Palo Alto, Plymouth, Pottawattamie, Shelby, Sioux, Story, Webster, Woodbury, and Wright.

34. The pipeline project is underway. Summit is in the process of securing the necessary permits and negotiating with landowners for land access.

35. In Iowa, Summit has been engaged with the Iowa Utilities Board (the "IUB") for almost two years as part of the planning and permitting for the pipeline project. On January 28, 2022, Summit filed an extensive application with the IUB for the siting permit required for the pipeline under Iowa Law.[12] That application includes detailed legal descriptions and maps of the route, engineering information on the proposed project, details about the nature of the landforms being crossed, information about road and other types of crossings, and more.

---

[12] *See In re: Summit Carbon Solutions LLC*, Docket No. HLP-2021-0001 (Iowa Utils. Bd. Jan. 28, 2022), https://wcc.efs.iowa.gov/cs/idcplg?IdcService=GET_FILE&allowInterrupt= 1&RevisionSelectionMethod=latest&dDocName=2082361&no.

36. In the fall of 2021, Summit held informational meetings facilitated by the IUB in all but one of the 30 counties now included in the pipeline project. In August 2023, after the pipeline project was expanded, Summit held an informational meeting in the newly added Mitchell County.

37. The IUB permitting process is nearly complete. The IUB's hearing on Summit's petition ran for 25 hearing days from August 2023 to November 2023 and has since concluded.[13] All parties have filed post-hearing briefs, and post-hearing reply briefs are due on January 19, 2024. After post-trial briefing, the IUB will render a decision.

38. Additionally, and as is consistent with the IUB process, Summit has already obtained voluntary easements for more than 74% of the proposed route in Iowa and has already paid more than $159 million to Iowa landowners, with $4.5 million going to Kossuth County landowners.

39. The pipeline project will help reduce the carbon footprint and environmental impact of ethanol production by facilitating the transportation and sequestration of $CO_2$, thereby reducing its release into the atmosphere, which in turn will reduce the carbon intensity of and enhance the long-term economic viability of Iowa's ethanol and agriculture industries.

40. Ethanol plants whose $CO_2$ byproduct is transported through Summit's interstate pipeline will be equipped to produce carbon-neutral fuel by 2030 and will be better positioned to compete in energy markets that prefer or require fuels with low carbon intensity, including the Canada, California, and Oregon markets discussed above.

---

[13] *See* Order Establishing Briefing Schedule and Addressing Brief Page Limits at 1, *In re: Summit Carbon Solutions LLC*, Docket No. HLP-2021-0001 (Iowa Utils. Bd. Nov. 17, 2023), https://wcc.efs.iowa.gov/cs/idcplg?IdcService=GET_FILE&allowInterrupt=1&RevisionSelectionMethod=latest&dDocName=2134615&noSaveAs=1.

**Kossuth County Amendment to the Zoning Ordinance**

41. Even though the federal government regulates the safety of Summit's pipeline project (as discussed below) and the IUB has the statutory authority to issue a route permit for the project upon a finding that it promotes the public necessity and convenience, some Iowa counties have taken their own steps to regulate Summit's and other pipeline projects, citing safety, zoning, and permitting concerns.

42. One of those counties is Kossuth County. On December 12, 2023, the Kossuth County Board of Supervisors approved amendments to the Kossuth County Zoning Ordinance "for the purpose of regulating and restricting the use of land for the transport of hazardous liquid through a hazardous liquid pipeline." Kossuth County, Iowa, Amendments to the Kossuth County Zoning Ordinance No. 300 (Dec. 12, 2023).

43. Ordinance No. 300, which specifically mentions Summit's pipeline project by name, establishes a new permitting scheme that imposes "conditions and safeguards when using land in [Kossuth] County for purposes of a Hazardous Liquid Pipeline." Kossuth County, Iowa, Ordinance No. 300 § 25.0 (Dec. 12, 2023).

44. Under Ordinance No. 300, pipeline companies like Summit must "submit an Application to the County Zoning Administrator for a Conditional Use Permit" to construct a pipeline in the County and, if granted, must construct the pipeline in accordance with the ordinance's mandates. Kossuth County, Iowa, Ordinance No. 300 § 25.31 (Dec. 12, 2023). Those mandates include compliance with minimum setback distances (*id.* § 25.4), the submission of an emergency response plan (*id.* § 25.11), and adherence to certain abandonment and restoration procedures (*id.* § 25.12), among others.

45. The ordinance's stated purpose is to "regulate and restrict the use of land in the County for the transport of Hazardous Liquid through a Hazardous Liquid Pipeline in a manner

that is in accordance with the County's current comprehensive plan and that is designed to . . . (1) to **secure safety** from fire, flood, panic, and other dangers; (2) to **protect health and the general welfare**; and (3) to facilitate the adequate provision of" certain services. Kossuth County, Iowa, Ordinance No. 300 § 25.01 (Dec. 12, 2023) (emphasis added).

46. Ordinance No. 300 provides that "exceptions, conditions, or limitations [to permit applications made under the Ordinance] shall be established in order to protect the **health, safety, and welfare** of the public and to preserve property values." Kossuth County, Iowa, Ordinance No. 300 § 23.211 (Dec. 12, 2023) (emphasis added).

47. A true and accurate copy of Ordinance No. 300 is attached as **Exhibit A**.

48. Ordinance No. 300 is injuring Summit by preventing it from completing—or even beginning—the portion of the pipeline project in Kossuth County.

**The Pipeline Safety Act**

49. Although Kossuth County, through its Board of Supervisors, seeks to regulate safety aspects of Summit's pipeline project, federal law already exclusively regulates interstate pipeline safety under the Pipeline Safety Act ("PSA"), 49 U.S.C. §§ 60101 *et seq*.

50. Congress enacted the PSA in 1994 "to revise, codify, and enact without substantive change," the Natural Gas Pipeline Safety Act of 1968 (NGPSA) and the Hazardous Liquids Pipeline Safety Act of 1979 (HLPSA). Pub. L. No. 103-272, 108 Stat. 745, preamble (1994). The PSA's purpose "is to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities." 49 U.S.C. § 60102(a)(1).

51. Under the PSA, the U.S. Department of Transportation is charged with "prescrib[ing] minimum safety standards for pipeline transportation and for pipeline facilities." 49 U.S.C. § 60102(a)(2). The PSA also provides that DOT "shall regulate carbon dioxide transported by a hazardous liquid pipeline facility" and "shall prescribe standards related to hazardous liquid

to ensure the safe transportation of carbon dioxide by such a facility." 49 U.S.C. § 60102(i)(1). DOT's regulatory authority, in turn, is delegated to the Pipeline and Hazardous Materials Safety Administration (PHMSA). *See* 49 U.S.C. § 108(a), (f).

52. $CO_2$ is a "hazardous liquid" under the PSA. *See* 49 U.S.C. § 60101(a)(4).

53. Because Summit is engaged in the interstate pipeline transportation of hazardous liquid and the construction, development, and operation of interstate hazardous liquid pipeline facilities, its project is subject to federal regulation under the PSA.

54. Under the PSA, "[a] State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation." 49 U.S.C. § 60104(c).

55. Through § 60104(c), the PSA "expressly preempts" any local government's "attempt to impose safety regulations" on interstate pipeline projects. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 880 (9th Cir. 2006); *see also, e.g., id.* at 878 ("Federal preemption of the regulation of interstate pipeline safety in any other manner is manifest in the language of the PSA provision entitled 'Preemption.'"); *Kinley Corp.*, 999 F.2d at 359 ("Congress granted exclusive authority [through the HLPSA] to regulate the safety of construction and operation of interstate hazardous liquid pipelines to the Secretary of the Department of Transportation. This Congressional grant of exclusive federal regulatory authority precludes state decision-making in this area altogether and leaves no regulatory room for the state to either establish its own safety standards or supplement the federal safety standards."); *ANR Pipeline Co.*, 828 F.2d at 470 ("Congress intended to preclude states from regulating in any manner whatsoever with respect to the safety of interstate transmission facilities. . . . [T]he NGPSA leaves nothing to the states in terms of substantive safety regulation of interstate pipelines, regardless of whether the local

regulation is more restrictive, less restrictive, or identical to the federal standards."); *Summit Carbon Solutions, LLC v. Shelby County, Iowa et al.*, No. 1:22-cv-20, Dkt. 82, at 7 (S.D. Iowa Dec. 4, 2023) ("[L]ocal governments are preempted from regulating the safety of facilities addressed by federal law[.]"); *Couser et al. v. Story County, Iowa et al.*, No. 4:22-cv-383, Dkt. 55, at 17 (S.D. Iowa Dec. 4, 2023) ("Put simply, the PSA is a sweeping exercise of express preemption." (citation omitted)).

**Iowa Code Chapter 479B**

56. The Iowa legislature has granted the IUB "general supervision of all pipelines," Iowa Code § 474.9, a phrase that carries preemptive effect. And under Iowa Code Chapter 479B, the legislature has specifically granted the IUB "the authority" over the permitting and siting of hazardous liquids pipelines.

57. The statute provides:

> It is the purpose of the general assembly in enacting this law to grant the utilities board the authority to implement certain controls over hazardous liquid pipelines to protect landowners and tenants from environmental or economic damages which may result from the construction, operation, or maintenance of a hazardous liquid pipeline or underground storage facility within the state, to approve the location and route of hazardous liquid pipelines, and to grant rights of eminent domain where necessary.

Iowa Code § 479B.1.

58. It is squarely within the IUB's province to "grant a permit in whole or in part upon terms, conditions, and restrictions as to location and route as it determines to be just and proper." Iowa Code § 479B.9.

59. Under this delegation of authority, the IUB has developed extensive and detailed rules and requirements applicable to the permitting of hazardous liquids pipelines. *See, e.g.*, Iowa Admin. Code 199-9, 199-13.

60. Iowa Code Chapter 479B and the IUB's regulations preempt Kossuth County's separate permitting processes that would require Summit to meet additional requirements beyond what the state law permitting process requires. *See, e.g.*, *Goodell*, 575 N.W.2d at 503; *Summit Carbon Solutions, LLC v. Shelby County, Iowa et al.*, No. 1:22-cv-20, Dkt. 82, at 5–6 (S.D. Iowa Dec. 4, 2023) (holding a county pipeline ordinance preempted by state law because "the challenged restrictions impose severe limitations that will lead to a situation where the IUB may grant a permit to construct a pipeline and Summit is unable to do so."); *Couser et al. v. Story County, Iowa et al.*, No. 4:22-cv-383, Dkt. 55, at 24–28 (S.D. Iowa Dec. 4, 2023).

## COUNT I
### (Supremacy Clause Preemption)

61. Plaintiff realleges and incorporates by reference all allegations in the Complaint.

62. Under the Supremacy Clause, "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As a result, state and local laws, ordinances, and other regulations that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

63. The purpose of Kossuth County's Ordinance No. 300 is to address safety aspects of hazardous liquid pipelines, including Summit's pipeline project.

64. As such, Kossuth County's ordinance constitutes a "safety standard[] for interstate pipeline facilities or interstate pipeline transportation." 49 U.S.C. § 60104(c).

65. Ordinance No. 300 is designed and serves to supplement and supplant the methods of regulating pipeline safety that Congress has established and delegated to DOT and PHMSA. *See Summit Carbon Solutions, LLC v. Shelby County, Iowa et al.*, No. 1:22-cv-20, Dkt. 82, at 7 (S.D. Iowa Dec. 4, 2023) ("[L]ocal governments are preempted from regulating the safety of

facilities addressed by federal law[.]"); *Couser et al. v. Story County, Iowa et al.*, No. 4:22-cv-383, Dkt. 55, at 33 (S.D. Iowa Dec. 4, 2023) ("[S]etbacks are within the field of safety standards, not within the field of location and routing.").

66. Ordinance No. 300 purports to regulate within a field so pervasively occupied by federal law that any state or local regulation is precluded and excluded.

67. Ordinance No. 300 violates the PSA, conflicts with the PSA, and stands as an obstacle to accomplishing Congress's full purposes and objectives.

68. The PSA therefore preempts Ordinance No. 300—by express, field, and conflict preemption—rendering it invalid, unenforceable, and null and void.

## COUNT II
### (Iowa Statutory Preemption)

69. Plaintiff realleges and incorporates by reference all allegations in the Complaint.

70. Under the Iowa Constitution, "a county's exercise of home rule power cannot be 'inconsistent with the laws of the general assembly.'" *Goodell*, 575 N.W.2d at 500 (quoting Iowa Const. art. III, § 39A). Indeed, "the constitutional grant of home rule power is carefully qualified so as to withhold the grant of power where it conflicts with [a] state statute." *Id.* (citation and quotation marks omitted); *see also Mall Real Est., L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 195 (Iowa 2012) ("[L]egislative power trumps the power of local authorities when the legislature exercises its power." (citation and quotation marks omitted)).

71. Under Iowa law, then, local regulations and ordinances that conflict with or are irreconcilable with state law are preempted and invalid. *See Goodell*, 575 N.W.2d at 500–01; *Mall Real Est.*, 818 N.W.2d at 196; *Worth Cnty. Friends of Agric. v. Worth County*, 688 N.W.2d 257, 262 (Iowa 2004). When a "local ordinance would prohibit an activity absent compliance with the additional requirements of local law, even though under state law the activity would be permitted

because it complied with the requirements of state law," then the regulation is "inconsistent with state law and preempted." *Goodell*, 575 N.W.2d at 501.

72. Iowa state law grants the IUB "the authority to implement certain controls over hazardous liquid pipelines to protect landowners and tenants from environmental or economic damages which may result from the construction, operation, or maintenance of a hazardous liquid pipeline or underground storage facility within the state, [and] to approve the location and route of hazardous liquid pipelines." Iowa Code § 479B.1.

73. Ordinance No. 300 purports to impose an additional permitting process on hazardous liquids pipelines, separate and apart from the standards established by the IUB. Under Ordinance No. 300, Summit must meet all siting and other requirements imposed by Kossuth County in addition to those required by the IUB.

74. As such, Ordinance No. 300 is designed and serves to supplement and supplant the methods of regulating pipeline activities that the State of Iowa has established and delegated to the IUB.

75. Ordinance No. 300 purports to regulate within a field that the Iowa legislature has so pervasively covered that any county regulation is precluded and excluded.

76. Ordinance No. 300 is irreconcilable with Iowa state law because it prohibits activity otherwise permitted under state law "absent compliance with the additional requirements of local law." *Goodell*, 575 N.W.2d at 501; *see Summit Carbon Solutions, LLC v. Shelby County, Iowa et al.*, No. 1:22-cv-20, Dkt. 82, at 5–6 (S.D. Iowa Dec. 4, 2023) ("[T]he challenged restrictions impose severe limitations that will lead to a situation where the IUB may grant a permit to construct a pipeline and Summit is unable to do so."); *Couser et al. v. Story County, Iowa et al.*, No. 4:22-cv-383, Dkt. 55, at 19–28 (S.D. Iowa Dec. 4, 2023).

77. Ordinance No. 300 violates the Iowa statute, conflicts with the Iowa statute, and stands as an obstacle to accomplishing the State of Iowa's full purposes and objectives.

78. The Iowa statutory scheme established by Chapter 479B therefore preempts Ordinance No. 300—by express, field, and conflict preemption—rendering it invalid, unenforceable, and null and void.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1. Under 28 U.S.C. §§ 2201 and 2022 and Federal Rule of Civil Procedure 57, declare that Ordinance No. 300 is preempted by the Pipeline Safety Act and is invalid, unenforceable, and null and void as applied to Summit's pipeline project;

2. Under 28 U.S.C. §§ 2201 and 2022 and Federal Rule of Civil Procedure 57, declare that Ordinance No. 300 is preempted by Iowa state law and is invalid, unenforceable, and null and void as applied to Summit's pipeline project;

3. Under Federal Rule of Civil Procedure 65, preliminarily and permanently enjoin Kossuth County from (i) enforcing or implementing Ordinance No. 300, (ii) enforcing or implementing any other ordinances on the permitting, construction, or development of Summit's pipeline project, and (iii) enforcing or implementing any resolution, ordinance, moratorium, ban, or other regulation that purports or intends to regulate any safety or permitting aspect of Summit's pipeline project;

4. Award Plaintiff its costs under Federal Rule of Civil Procedure 54 and any other applicable authority; and

5. Award such other and further relief as the Court deems appropriate.

DATED, this 2nd day of January, 2024.

**FREDRIKSON & BYRON, P.A.**

BY:  /s/ *Bret A. Dublinske*
    Bret A. Dublinske (AT0002232)
    Brant M. Leonard (AT0010157)
    Kristy Dahl Rogers (AT0012773)
    Nicci M. Ledbetter (AT0014206)
    **FREDRIKSON & BYRON, P.A.**
    111 East Grand Avenue, Suite 301
    Des Moines, IA 50309
    Phone: (515) 242-8900
    Fax: (515) 242-8950
    Email: bdublinske@fredlaw.com
           bleonard@fredlaw.com
           krogers@fredlaw.com
           nledbetter@fredlaw.com

    Brian D. Boone
    *\*pro hac vice pending*
    Michael R. Hoernlein
    *\*pro hac vice pending*
    **ALSTON & BIRD LLP**
    1120 South Tryon Street, Suite 300
    Charlotte, NC 28203
    (704) 444-1000
    Email: brian.boone@alston.com
           michael.hoernlein@alston.com

    Karla M. Doe
    *\*pro hac vice pending*
    **ALSTON & BIRD LLP**
    1201 West Peachtree Street
    Atlanta, GA 30309
    (404) 881-7000
    Email: karla.doe@alston.com

    **ATTORNEYS FOR SUMMIT CARBON SOLUTIONS, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies the foregoing document was electronically filed with the Clerk of Court using the Electronic Document Management System (EDMS) on January 2, 2024, which will send a notice of electronic filing to all registered counsel of record.

**FREDRIKSON & BYRON, P.A.**

By: */s/ Bret A. Dublinske*
    Bret A. Dublinske
