**THE KOSSUTH COUNTY BOARD OF SUPERVISORS HAVE CONSIDERED AND APPROVED AT THREE SEPARATE MEETINGS AMENDMENTS TO THE KOSSUTH COUNTY ZONING ORDINANCE #300 AND NOW PUBLISHES THE AMENDMENT TO THE ZONING ORDINANCE TO MAKE IT EFFECTIVE**

**AN ORDINANCE AMENDING VARIOUS PROVISIONS OF THE KOSSUTH COUNTY ZONING ORDINANCE FOR THE PURPOSE OF REGULATING AND RESTRICTING THE USE OF LAND FOR THE TRANSPORT OF HAZARDOUS LIQUID THROUGH A HAZARDOUS LIQUID PIPELINE**

WHEREAS, Kossuth County, Iowa ("the County"), through its Board of Supervisors and under the authority of IA CONST Art. 3, § 39A, Iowa Code § 331.301, and Iowa Code § 335.3, has adopted the Kossuth County Zoning Ordinance (effective as of October 22, 1973), pertaining to county zoning and land use controls ("the Ordinance"); and

WHEREAS, the County may by ordinance lawfully regulate and restrict the use of land for trade, industry, residence, or other purposes in accordance with a comprehensive plan and designed to further the considerations and objectives set forth in Iowa Code § 335.5; and

WHEREAS, the County adopted a comprehensive plan in 1973, and an amendment in 2016, which among other things (1) sets forth a master land use plan; (2) community planning goals for each city in the county; (3) goals and objectives for economic development, housing, land use, and public facilities; and (4) an implementation plan for achieving the goals of the plan; and

WHEREAS, the comprehensive plan identified a number of goals for planning designed to provide guidance to development plans for the future of Kossuth County, among which are (1) to "diversify the economic base" and "to attract additional industries of varying types to Kossuth County" because it "will reduce the current dominant reliance on agriculture"; (2) to undertake "a unified effort to attract industry" because it will be "more effective than individual community efforts"; (3) to "maintain suitable population densities" that are "related to the services available and the ability of the land to support residential development"; (4) to "control scattered development" because "development should be controlled and centralized to permit efficient provision of such services as water, sewer, and police and fire protection"; (5) to "protect agricultural land"; (6) to "reserve land for industrial development" because "site determination will depend on availability of sewer, water, power, and transportation facilities"; (7) to "reserve land for open space and recreation" because "only a limited supply of prime recreation land remains in the county" and because such land "should be developed for recreation purposes or reserved for future development"; (8) to "prevent incompatible land uses" because "land uses which conflict should be separated and restricted to designated areas"; (9) to "adopt land use controls" because "orderly development can be obtained only through adoption and effective administration of land use controls"; (10) to "provide a variety of housing types" because "housing should be available to meet the needs of all county residents"; (11) to "develop recreation areas" because "additional lands should be purchased and developed as funds become available"; (12) to "improve community parks" because "local recreation opportunity should be

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 1 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 1 of 20    Exhibit A

improved in some communities"; (13) to "protect the land" because "good conservation practices are recommended to prevent soil erosion and other detrimental effects"; and

WHEREAS, the County's comprehensive plan also states that (1) "Housing is one of the most important elements in the composition of a community or region"; and (2) "a community should provide adequate streets and utilities, schools and playgrounds, protection against incompatible land uses, and standards for sound construction"; and

WHEREAS, the considerations and objectives of land use and zoning regulations under Iowa Code § 335.5 require counties to design the regulations (1) to secure safety from fire, flood, panic, and other dangers; (2) to protect health and the general welfare; (3) to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirement; and

WHEREAS, the County and the several municipalities within the County employ a number of emergency response personnel, including local sheriffs, police, firefighters, and emergency medical service responders, and are responsible for ensuring the safety of these public servants through adequate training, knowledge, and access to personal protective equipment; and

WHEREAS, the State of Iowa through Iowa Code chapter 29C requires the County and the several cities within the County to participate in and fund county-level and regional emergency response planning for both natural and human-caused disasters through its joint county-municipal local emergency management commission and agency, to support response to disasters in other Iowa counties, and to establish emergency communication measures to alert County residents of threats to their lives and wellbeing; and

WHEREAS, the County has authority under Iowa law to require information from a company that proposes to construct a hazardous liquid pipeline in the County that will enable the County to fulfill its statutorily required emergency planning duties and protect county emergency response personnel; and

WHEREAS, the County, in coordination with the State of Iowa, other counties, and the several cities within the County, has adopted a Comprehensive Emergency Management Plan in order to provide for a coordinated response to a disaster or emergency in Kossuth County; and

WHEREAS, the existing emergency response plan for the County does not currently evaluate the risk of or plan for a response to a rupture of a carbon dioxide pipeline passing through the County; and

WHEREAS, the transport of hazardous liquid through an hazardous liquid pipeline constitutes a threat to public health and the general welfare such that the Pipeline and Hazardous Materials Safety Administration of the United States Department of Transportation ("PHMSA") has the authority to prescribe safety standards for such pipelines; and

WHEREAS, the federal Pipeline Safety Act in 49 U.S.C. § 60101 et seq. authorizes the United States Department of Transportation to regulate safety standards for the design, construction,

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 2 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 2 of 20   Exhibit A

operation, and maintenance of hazardous liquid pipelines, including those that transport supercritical carbon dioxide, but § 60104(e) of this law states that "[t]his chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility," such that no federal regulation determines the location or route of a hazardous liquid pipeline; therefore, the State of Iowa and its political subdivisions may determine the route or location of a federally regulated hazardous liquid pipeline based on any policy factors the State of Iowa deems relevant; and

WHEREAS, the State of Iowa and its political subdivisions may and must consider the risks to present and future land uses of a hazardous liquid pipeline when selecting a route for it, so as to prevent its construction overly near to residential buildings, existing and future public and private infrastructure, high and vulnerable population buildings such as schools and nursing homes, future housing or industrial developments, and confined animal facilities; and

WHEREAS, in Iowa, the Iowa Utilities Board ("the IUB") has authority pursuant 49 U.S.C. § 60104(e) of the Hazardous Liquid Pipeline Safety Act and under Iowa Code chapter 479B to implement certain controls over hazardous liquid pipelines, including the authority to approve the location and routing of hazardous liquid pipelines prior to their construction; and

WHEREAS, under Iowa Code § 479B.4, a pipeline company must file a verified petition with the IUB asking for a permit to construct, maintain, and operate a new pipeline along, over, or across the public or private highways, grounds, waters, and streams of any kind in this state; and

WHEREAS, Iowa Code § 479B.5 requires that each petition for a permit must state the relationship of the proposed project to the present and future land use and zoning ordinances; and

WHEREAS, Iowa Code § 479B.20: (1) specifically provides for the application of provisions for protecting or restoring property that are different than the provisions of section 479B.20 and the administrative rules adopted thereunder, if those alternative provisions are contained in agreements independently executed by the pipeline company and the landowner; (2) specifically contemplates that such agreements will pertain to "line location;" (3) specifically requires the County to hire a "county inspector" to enforce all land restoration standards, including the provisions of the independently executed agreements; and (4) specifically requires that independent agreements on "line location" between the landowner and the pipeline company must be provided in writing to the county inspector; and

WHEREAS, the construction of a hazardous liquid pipeline constitutes a use of land for trade, industry, or other purposes which the County has not heretofore specifically regulated or restricted through the use of zoning or other ordinances, but which constitutes an industrial use of the land that is not currently a permitted use in any of the County's zoning districts; and

WHEREAS, Summit Carbon Solutions, LLC ("Summit") has submitted to the IUB a Petition for a Hazardous Liquid Pipeline Permit ("the Permit") and proposes to build a carbon capture and sequestration project ("Project") that would transport up to 12 million metric tons of carbon dioxide ("$CO_2$") annually from participating industrial facilities in Iowa, as well as CO2 from

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 3 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 3 of 20   Exhibit A

facilities in Minnesota, North Dakota, South Dakota, and Nebraska to a sequestration site in North Dakota, where the CO2 will be permanently stored; and

WHEREAS, Navigator Heartland Greenway, LLC ("Navigator") has also submitted to the IUB a Petition for a Hazardous Liquid Pipeline Permit ("the Petition") and proposes to build and operate a large-scale carbon capture pipeline system spanning approximately 1,300 miles across five states in the Midwest, including 811 miles in Iowa, that will capture carbon dioxide from local facilities before it reaches the atmosphere, convert it to a liquid form, and transport it via pipeline to a permanent underground sequestration site; and

WHEREAS, Summit and Navigator have filed the IUB certain maps indicating that the proposed pipelines would be located in and pass through the County; and

WHEREAS, the IUB has not yet issued a permit to Summit or to Navigator; and

WHEREAS, there are several factors that would influence human health and wellbeing in the event of a rupture of such a pipeline, including CO2 parts per million (ppm) concentration, wind speed and direction, velocity of the gas exiting the pipe, and thermodynamic variables; and

WHEREAS, (1) a sudden rupture of a CO2 pipeline may lead to asphyxiation of nearby people and animals, (2) CO2 is lethal if inhaled for 10 minutes at a concentration larger than 10% by volume, (3) the National Institute for Occupational Safety and Health ("NIOSH") has set the Immediate Dangerous to Life and Health (IDLH) limit of CO2 at 4% by volume; and (4) at concentrations of 25% volume, CO2 is lethal to humans within 1 minute; and

WHEREAS, the County Board of Health has issued a Public Health Position Statement ("Statement") that (1) expresses concern for the risk of CO2 exposure to humans, the environment, and to livestock; (2) states that CO2 must be under tremendous pressure to be in liquid form for transport, creating the potential for a pipeline rupture; (3) states that CO2 is an asphyxiant and a toxicant that is odorless and colorless, making a slow leak difficult to detect; (4) states that CO2 freezes skin on contact and that in high concentrations, CO2 will kill humans, pets, and livestock; (5) states that first responders and hospitals may not be prepared for a mass toxic gas incident; and (6) recommends that CO2 pipeline routes be kept at least 1,000 feet from all residences until an updated emergency response plan is approved and recommended otherwise; and

WHEREAS, the rupture of a carbon dioxide pipeline in the County would likely release large amounts of carbon dioxide that could rise to dangerous levels near the rupture and that could threaten the health and lives of county residents, emergency response personnel, and animals, including but not limited to valuable livestock in confined animal feeding facilities; and

WHEREAS, a rupture of a carbon dioxide pipeline near a populated area could cause a mass casualty event; and

WHEREAS, on February 22, 2020, a 24-inch diameter carbon dioxide pipeline ruptured approximately one (1) mile from the town of Satartia, Mississippi ("the Satartia Incident"), and

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 4 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 4 of 20

Exhibit A

caused a number of residents to become unconscious or intoxicated, required the hospitalization of forty-nine (49) persons and the evacuation of more than two hundred (200) persons, and also put the lives and welfare of local emergency response personnel at risk; and

WHEREAS, on May 26, 2022, PHMSA announced that it would consider new administrative measures to protect Americans from carbon dioxide pipeline failures after the Satartia Incident, including (1) initiating a new rulemaking to update standards for CO2 pipelines, including requirements related to emergency preparedness, and response; (2) issuing an advisory bulletin to remind owners and operators of gas and hazardous liquid pipelines, particularly those with facilities located onshore or in inland waters, about the serious safety-related issues that can result from earth movement and other geological hazards; and (3) conducting research solicitations to strengthen pipeline safety of CO2 pipelines; and

WHEREAS, the rulemaking initiated by PHMSA to update safety and emergency preparedness standards for CO2 pipelines is not yet complete; and

WHEREAS, the IUB does not have jurisdiction over emergency response in Iowa and has no expertise in emergency response planning; and

WHEREAS, the County does not have access to scientific assessments of the area of risk that would result from a rupture of the carbon dioxide pipeline proposed to be constructed in the County, which can be estimated through the use of computer modeling; and

WHEREAS, the County seeks to require the preparation of an estimate of the hazard zone resulting from a rupture of a carbon dioxide pipeline proposed to pass through the County, for the purposes of planning the County's emergency response and of facilitating the least dangerous route through the County; and

WHEREAS, the County may adopt land use and zoning restrictions (1) for purposes of regulating the use of land in the County, including the execution of independent agreements between landowners and pipeline companies regarding line location; and (2) for purposes of facilitating the least dangerous route through the County of a hazardous liquid pipeline, including requiring the provision of emergency response and hazard mitigation information to the County for purposes of planning the County's response to an incident; and

WHEREAS, the adoption of such land use and zoning regulations is (1) consistent with and not preempted by Iowa Code chapter 479B, including Iowa Code §§ 479B.5(7) and 479B.20, and (2) necessary to facilitate the IUB's approval of a permit, in whole or in part upon terms, conditions, and restrictions as to location and route that are "just and proper;" and

WHEREAS, in Exhibit F to the application for the Permit, Summit states that it will "work with local county officials to verify if any additional permits or approvals are needed prior to construction of the Project…"; and

WHEREAS, the County intends to establish a process under the Ordinance for permitting and approving the use of land in the County for the transport of hazard liquid through a hazard liquid

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 5 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 5 of 20   Exhibit A

pipeline that is not inconsistent with or preempted by federal law, including the Hazardous Liquid Pipeline Safety Act, and not inconsistent with or preempted under Iowa law, including Iowa Code chapters 479B, 331, and 335.

WHEREAS, the County Planning and Zoning Commission held a public hearing on the Ordinance on February 27, 2023 and on April 17, 2023 recommended approval of the Ordinance;

NOW THEREFORE, BE IT ENACTED BY THE SUPERVISORS OF KOSSUTH COUNTY, IOWA:

SECTION 1. – TEXT AMENDMENT – Article III – General Provisions, of the Zoning Ordinance, is amended by adding the following new section to the Article:

> 3.15 <u>Hazardous Liquid Pipelines</u> – No person or property owner shall use land in any area or district in this county for purposes of transporting hazardous liquid through a hazardous liquid pipeline except under the conditions and restrictions provided hereinafter in Article 25 – Hazardous Liquid Pipelines. For purposes this Zoning Ordinance, "hazardous liquid" and "hazardous liquid pipeline" shall have the meanings defined in Article 25.

SECTION 2. – TEXT AMENDMENT – Article XXIII – Board of Adjustment, Section 23.2, Subsection 23.211 Special Exceptions, of the Zoning Ordinance, is amended by striking the Subsection and replacing it with the following:

23.211 Special Exceptions, Conditional Uses, and Use Limitations - The County may create a class of uses that have conditions or other use limitations attached to approval. The following guidelines shall be used when processing requests for special exceptions or conditional uses and when administrating any use limitations. Such exceptions, conditions or limitations shall be established in order to protect the health, safety, and welfare of the public and to preserve property values. The Board of Adjustment may authorize conditional uses as designated in the district use regulations or as otherwise provided in the Zoning Ordinance. In granting a permit for a special exception or a conditional use, the Board of Adjustment may prescribe and impose any appropriate terms, conditions, safeguards, or an operating/maintenance plan for the proposed use with appropriate consideration given to the following: (1) the applicable district use regulations; (2) other applicable requirements of this Zoning Ordinance; and (3) the guidelines, standards and requirements of section as described below.

SECTION 3. – TEXT AMENDMENT – Articles XXV, XXVI, XXVII, and XXVIII are renumbered as Articles XXVI, XXVII, XXVIII, and XXIX, respectively, and all of their numbered sections and subsections are renumbered accordingly.

SECTION 4. – TEXT AMENDMENT – The Zoning Ordinance, is amended by adding the following new Article XXV in place of the former Article XXV which is being renumbered:

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 6 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 6 of 20   Exhibit A

# Article XXV
# HAZARDOUS LIQUID PIPELINES

25.0   Purposes

This Article prescribes and imposes the appropriate conditions and safeguards when using land in this County for purposes of a Hazardous Liquid Pipeline.

The purposes of the regulations provided in this Article are:

25.01   To lawfully regulate and restrict the use of land in the County for the transport of Hazardous Liquid through a Hazardous Liquid Pipeline in a manner that is in accordance with the County's current comprehensive plan and that is designed to implement the purposes of county zoning pursuant to Iowa Code chapter 335, including all of the following: (1) to secure safety from fire, flood, panic, and other dangers; (2) to protect health and the general welfare; (3) to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirement.

25.02   To implement section 25.01 with regard to the comprehensive plan's goals by protecting the area within two miles each city's incorporated limits (1) for purposes of encouraging local economic development, preserving and improving basic infrastructure, and creating new housing opportunities; and (2) for purposes of ensuring that communities where development is proposed within the two-mile planning jurisdiction can participate with the County in the development oversight of these areas to assure the compatibility with the development standards of the city, service provisions by the city and potential future growth patterns of the city.

25.03   To implement section 25.01 with regard to the County's legal obligation to engage in emergency response and hazard mitigation planning, including furthering the comprehensive plan's goals and objectives for assessing ongoing mitigation, evaluating mitigation alternatives, and ensuring there is a strategy for implementation and including the need to protect the health and welfare of both residents and emergency response personnel.

25.04   To implement section 25.01 in a manner that is not inconsistent with or preempted by federal or state law, including the United States Constitution, the federal Pipeline Safety Act in 49 U.S.C. § 60101 et seq., the Iowa Constitution, and Iowa Code chapters 29C, 479B, 331, and 335.

25.05   To implement section 25.01 in a manner that treats all Hazardous Liquid Pipelines in a similar manner, to the extent they are similarly situated, and to utilize to the greatest extent feasible the land use and zoning regulations and processes already utilized in the County.

25.06   To implement section 25.01 in a manner (1) that facilitates the approval of a permit by the Iowa Utilities Board, in whole or in part upon terms, conditions, and restrictions as to location and route that are "just and proper;" and (2) that creates a

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 7 of 20

process that allows a Hazardous Liquid Pipeline operator to work with local county officials to obtain all local permits or approvals prior to the construction of the pipeline.

25.1    Definitions

For purposes of this Article, unless the context otherwise requires:

*"Affected person"* means the same as defined in Iowa Administrative Code 199-13.1(3) and, unless otherwise defined in that rule, means any Person with a legal right or interest in the property, including but not limited to a landowner, a contract purchaser of record, a Person possessing the property under a lease, a record lienholder, and a record encumbrancer of the property.

"Applicant" means a Pipeline Company or a Property Owner who applies for a Conditional Use Permit for a Hazardous Liquid Pipeline pursuant to this Article.

"Application" means the documents and information an Applicant submits to the County for purposes of obtaining a Conditional Use Permit as well as the related process and procedures for considering the application pursuant to this Article.

"Blast Zone" means the geographic area in County that would be subject to a shock wave from rupture of a Hazardous Liquid Pipeline, including of a Carbon Dioxide Pipeline, that could harm or kill persons or animals due solely to physical trauma, for example from flying debris or the physical impact of a pressure wave resulting from a rupture.

"Board of Adjustment" means the Kossuth County Board of Adjustment established pursuant to Iowa Code chapter 335 and this Zoning Ordinance.

"Carbon Dioxide Pipeline" means a Hazardous Liquid Pipeline intended to transport liquified carbon dioxide and includes a Pipeline of 4 inches or more in diameter used to transport liquid, or supercritical fluid comprised of 50 percent or more of carbon dioxide ($CO_2$).

"Conditional Use Permit" means a special or conditional use, or a use limitation, authorized and approved by the Board of Adjustment in the manner and according to the guidelines, requirements, and standards provided in Article 23 of this Zoning Ordinance.

"Confidential Information" means information or records allowed to be treated confidentially and withheld from public examination or disclosure pursuant to Iowa Code chapter 22 or other applicable law.

"County" or "the County" means Kossuth County, Iowa.

"Emergency" means the same as defined in Iowa Administrative Code 199 rule 9.1(2) and, unless otherwise defined in that rule, means a condition involving clear and

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 8 of 20

Case 3:24-cv-03002-LTS-MAR    Document 1-1    Filed 01/02/24    Page 8 of 20    Exhibit A

immediate danger to life, health, or essential services, or a risk of a potentially significant loss of property.

"Facility" is any structure incidental or related to the Hazardous Liquid Pipeline and any space, resource, or equipment necessary for the transport, conveyance, or pumping of a Hazardous Liquid through a Hazardous Liquid Pipeline located in the County, including all related substations.

"Fatality Zone" means the geographic area in the County in which residents of the County would face a significant risk of loss of life due to a rupture of a Hazardous Liquid Pipeline, taking into consideration, in the case of a Carbon Dioxide Pipeline, the dispersion of $CO_2$ from a rupture, taking into consideration $CO_2$ concentration and the duration of exposure.

"Hazard Zone" means, in the case of a Carbon Dioxide Pipeline, the geographic area in the County in which residents of the County would likely become intoxicated or otherwise suffer significant adverse health impacts due to a rupture of a Carbon Dioxide Pipeline, taking into consideration the dispersion of $CO_2$ from a rupture, taking into consideration $CO_2$ concentration and the duration of exposure.

"Hazardous Liquid" means the same as defined in Iowa Code § 479B.2 and, unless otherwise defined there, means crude oil, refined petroleum products, liquefied petroleum gases, anhydrous ammonia, liquid fertilizers, liquefied carbon dioxide, alcohols, and coal slurries.

"Hazardous Liquid Pipeline," means a Pipeline intended to transport Hazardous Liquids, and also includes Class 3, Class 6, Class 8, or Class 9 hazardous materials, as defined by 49 C.F.R. § 173.120, et seq., with any portion proposed to be located within the County

"In-service date" is the date any Hazardous Liquid is first transported through any portion of a Pipeline located in the County.

"Independent Agreement" means alternative provisions regarding land restoration or Line Location contained in agreements independently executed by a Pipeline Company and a Landowner or a Property Owner as described in Iowa Code § 479B.20(10).

"IUB" means the Iowa Utilities Board created within the Iowa Department of Commerce pursuant to Iowa Code chapter 474.

"Landowner" means the same as defined in Iowa Code §§ 479B.4(4) and 479B.30(7), and, unless otherwise defined there, means a Person listed on the tax assessment rolls as responsible for the payment of real estate taxes imposed on the property and includes a farm tenant.

"Line Location" means the location or proposed location or route of a Pipeline on a Landowner's property.

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 9 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 9 of 20    Exhibit A

"Occupied Structure" means a Building or Structure that has been inhabited or used for residential, commercial, industrial, or agricultural purposes at any time during the twelve (12) months preceding an application for a Conditional Use Permit pursuant to this Article.

"PHMSA" means Pipeline and Hazardous Materials Safety Administration of the United States Department of Transportation.

"Person" means the same as defined in Iowa Administrative Code 199-13.1(3) and, unless otherwise defined in that rule, means an individual, a corporation, a limited liability company, a government or governmental subdivision or agency, a business trust, an estate, a trust, a partnership or association, or any other legal entity as defined in Iowa Code § 4.1(20).

"Pipeline" means the same as defined in Iowa Code § 479B.2 and, unless otherwise defined there, means an interstate pipe or pipeline and necessary appurtenances used for the transportation or transmission of hazardous liquids.

"Pipeline Company" means the same as defined in Iowa Code § 479B.2 and, unless otherwise defined there, means any Person engaged in or organized for the purpose of owning, operating, or controlling Pipelines for the transportation or transmission of any Hazardous Liquid or underground storage facilities for the underground storage of any Hazardous Liquid.

"Pipeline Construction" means the same as defined in Iowa Administrative Code 199-9.1(2) and, unless otherwise defined in that rule, means activity associated with installation, relocation, replacement, removal, or operation or maintenance of a pipeline that disturbs agricultural land, but shall not include work performed during an emergency, tree clearing, or topsoil surveying completed on land under easement with written approval from the landowner.

"Property Owner" means the owner or owners, together with his, her, its or their heirs, successors and/or assigns, of the land or property over, under, on, or through which, a Pipeline, or any part of it, including any related facilities, may be located and which is subject to the regulations and restriction of this Zoning Ordinance. Property Owner includes a Landowner and also includes a Person with whom a Pipeline Company negotiates or offers to execute an Independent Agreement with respect to a Pipeline.

"Reclamation" means the restoration and repair of damaged real property, personal property, land or other areas through which a Pipeline is constructed or from where it is removed as close as reasonably practicable to the condition, contour, and vegetation that existed prior to the construction or prior to the removal of the Pipeline, as applicable.

"Reclamation Cost" means the cost of Reclamation and includes the cost to restore or repair roads, bridges, or county property as well as the cost to restore or repair all real and personal property of Property Owners and Affected Persons.

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 10 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 10 of 20   Exhibit A

"Zoning Ordinance" or "the Zoning Ordinance" means the collection of land use and zoning regulations known as the Kossuth County Zoning Ordinance, as provided and made effective in the Zoning Ordinance.

## 25.2 Conditional Use Class Created and Use Limitations Imposed on Hazardous Liquid Pipelines

25.21   As provided in this Zoning Ordinance, all land in the County must be used in accordance with this Zoning Ordinance. As provided in Article 23 of this Zoning Ordinance, the County may create a class of uses that have conditions or other use limitations attached to approval. Such conditions are established in order to protect the health, wellbeing, and welfare of the public and to preserve property values.

25.22   The County hereby establishes a class of use for Hazardous Liquid Pipelines, and no land or property interest in this County, regardless of the zone or area, shall be used for purposes of a Hazardous Liquid Pipeline except in conformity with this Article.

## 25.3 Conditional Use Permits Required

25.31   A Pipeline Company that has filed a verified petition with the IUB asking for a permit to construct, maintain, and operate a new Pipeline along, over, or across land in this County shall submit an Application to the County Zoning Administrator for a Conditional Use Permit. The Pipeline Company shall submit the application for a Conditional Use Permit within thirty (30) days of filing the petition with the IUB, unless the petition was filed with the IUB prior to the effective date of this Article in which case the Pipeline Company shall submit an application for a Conditional Use Permit under this Article within thirty (30) days of the effective date of this Article. The Zoning Administrator may extend the time for filing the Application for good cause shown. However, any extension of more than 30 days must be approved by the Board of Adjustment.

25.32   A Property Owner that intends to negotiate or sell an easement to a Pipeline Company by means of an Independent Agreement shall submit an application to the County Zoning Administrator for a Conditional Use Permit before executing the Independent Agreement with the Pipeline Company. If a Property Owner executes an Independent Agreement with a Pipeline Company on or after the effective date of this Article without obtaining a Conditional Use Permit, the County may exercise all lawful remedies as provided elsewhere in this Zoning Ordinance.

25.33   Upon receiving an Application for a Conditional Use Permit from a Pipeline Company or from a Property Owner, the County Zoning Administrator and the Board of Adjustment shall consider the Application according to the process and standards set forth in this Article.

## 25.4 Separation Requirements

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 11 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 11 of 20   Exhibit A

The use of land for purposes of transporting Hazardous Liquids through Pipelines poses a threat to the public health and welfare, to the productivity of agricultural lands, and to the property values of residential, commercial, and industrial Property Owners in the County. The separation requirements of this section are designed to further the goals and objectives of the County's comprehensive zoning plan, including to protect public health and welfare, to preserve existing infrastructure and future development, and to maintain property values.

A Hazardous Liquid Pipeline shall not be constructed, used, sited, or located, in violation of the separation requirements listed below. In addition, the terms of an Independent Agreement regarding a Line Location shall conform to the separation requirements listed below. All distances shall be measured from the centerline of the proposed Hazardous Liquid Pipeline to the portion of the existing use nearest the centerline of the proposed Hazardous Liquid Pipeline.

The minimum separation distances for a Hazardous Liquid Pipeline are:

25.41 From the city limits of an incorporated city, not less than two and one half miles. This requirement applies to cities in other counties if the proposed pipeline is located in the County.

25.42 From a church, school, nursing home, long-term care facility, or hospital, not less than 2,600 feet.

25.43 From a public park or public recreation area, not less than 2,600 feet.

25.44 From any Occupied Structure, not less than 2,600 feet.

25.45 From a confined animal feeding operation or facility, not less than one quarter of one mile.

25.46 From an electric power generating facility with a nameplate capacity of 5MW or more, an electric substation, a public drinking water treatment plant, or a public wastewater treatment plant, not less than 1,000 feet.

25.47 From any public water system or any nonpublic water supply well subject to the rules of the Iowa Department of Natural Resources pursuant to 567 IAC chapter 43 or 567 IAC chapter 49, not less than 200 feet.

25.5 <u>Permit Application Requirements for Pipeline Companies</u>

A Pipeline Company applying for a Conditional Use Permit for a Hazardous Liquid Pipeline pursuant to this Article shall submit the following documents and information to the County Zoning Administrator:

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 12 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 12 of 20   Exhibit A

25.51   The information required for a Conditional Use Permit as described in Article 23 of this Zoning Ordinance, including all required forms prescribed by the County Zoning Administrator.

25.52   A complete copy of the application for a permit filed with the IUB pursuant to Iowa Code chapter 479B. This requirement is an ongoing requirement, and as the application for the IUB permit is amended or changed, the Pipeline Company shall provide updated information and documents to the County.

25.53   A map identifying each proposed crossing of a County road or other County property.

25.54   A map and a list containing the names and addresses of all Affected Persons in the County. The map and list shall include all Property Owners who have executed an Independent Agreement or who have been or will be contacted about the execution of an Independent Agreement.

25.55   A set of plans and specifications showing the dimensions and locations of the Pipeline, including plans and specifications for all related facilities and above-ground structures, such as pumps, lift-stations, or substations.

25.56   A copy of the standard or template Independent Agreement the Pipeline Company proposes to execute with Property Owners in the County. The standard or template for the Independent Agreement shall include terms and conditions that comply with the Abandonment, Discontinuance, and Removal requirements of section 25.12 of this Article.

25.57   The emergency response and hazard mitigation information required pursuant to section 25.11 of this Article.

25.58   All applicable fees required pursuant to section 25.7 of this Article.

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 13 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 13 of 20   Exhibit A

25.59   A statement identifying any Confidential Information in the Application and a request, if any, to withhold such information from public examination or disclosure as provided in, and to the extent permitted by, Iowa Code chapter 22. A failure to identify Confidential Information in the Application may result in the County treating such information as a public record.

25.6   Permit Application Requirements for Property Owners

A Property Owner applying for a Conditional Use Permit for a Hazardous Liquid Pipeline pursuant to this Article shall submit the following documents and information to the County Zoning Administrator:

25.61   The information required for a Conditional Use Permit as described in Article 23 of this Zoning Ordinance, including all required forms prescribed by the County Zoning Administrator.

25.62   A copy of the Independent Agreement the Property Owner proposes to execute with the Pipeline Company, including a map and a legal description of the proposed Line Location and a statement of verification of compliance with the separation requirements of this Article.

25.63   All applicable fees required pursuant to section 25.7 of this Article.

25.7   Fees and Assessments

The following fees and assessments apply to a Conditional Use Permit for a Hazardous Liquid Pipeline pursuant to this Article:

25.71   A Pipeline Company seeking a Conditional Use Permit shall pay the following fees and assessments:

   a. An application fee in the amount of $100 for each Affected Person identified in the Application.

   b. An annual assessment fee in the amount of $116.92 per mile of Pipeline constructed, operated, and maintained in the County, or an amount equal to the most current user fee assessed to the operators of Hazardous Liquid Pipelines by PHMSA, whichever is greater. This fee shall be due each year on the anniversary of the Pipeline's In-Service Date, and the County shall apply this assessment towards its emergency planning and hazard mitigation costs, including expenses for law enforcement and emergency response personnel.

   c. All other applicable user or permit fees required for crossing County roads or using the public right-of-way in the County.

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 14 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 14 of 20

Exhibit A

25.72  A Property Owner seeking a Conditional Use Permit shall pay a $100 application fee.

25.8  Public Hearing Requirements and Permit Approval

25.81  Upon receipt of an application for a Conditional Use Permit by a Pipeline Company, the County Zoning Administrator shall verify that the Pipeline Company permit application requirements of this Article are met and shall make a report to the Board of Adjustment recommending approval, denial, or modification of the Application. Upon the verification and report of the County Zoning Administrator, the Board of Adjustment shall set the date of one or more public hearings in the County on the question of granting a Conditional Use Permit to the Pipeline Company. Once the public hearing dates have been set, the Board of Adjustment shall publish notice in a local newspaper pursuant to Iowa Code § 331.305, and the Pipeline Company shall send notice of each scheduled public hearing to each Affected Person identified in the Application by United States Mail.

25.82  A public hearing shall not be required in the case of a Property Owner applying for a Conditional Use Permit. Upon receipt of an application for a Conditional Use Permit from a Property Owner, the County Zoning Administrator shall verify that the Property Owner permit application requirements are met and shall make a report to the Board of Adjustment recommending approval, denial, or modification of the Application. Upon the verification and report of the County Zoning Administrator, the Board of Adjustment shall consider the application at a regular meeting of the Board of Adjustment.

25.83  Once the application, public hearing, and other requirements of this Article are met, the Board of Adjustment shall consider each application for a Conditional Use Permit according to the standards set forth in Article 23 of this Zoning Ordinance regarding the powers of the Board of Adjustment and the standards and findings required of special or conditional uses. The Board of Adjustment shall issue a permit if the Board of Adjustment finds that all applicable standards are met. The burden of establishing that all applicable standards are met shall be on the Applicant for the Conditional Use Permit.

25.84  A Conditional Use Permit granted to a Pipeline Company pursuant to this Article is not transferrable to any Person. A Pipeline Company, or its successors in interest, shall apply for a new Conditional Use Permit whenever the Hazardous Liquid Pipeline is transferred or its use is materially or substantially changed or altered.

25.9  Appeals and Variances

A Pipeline Company or a Property Owner may appeal an adverse determination on a Conditional Use Permit, or may seek a special exception or variance from the Board of Adjustment, as provided elsewhere in this Zoning Ordinance.

25.10  Applicability and Compliance

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 15 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 15 of 20   Exhibit A

25.101  The permit requirement in section 25.3 and the separation requirements in section 25.4 of this Article shall not apply to (1) a Hazardous Liquid Pipeline that is already permitted, constructed, and placed in-service on or before the effective date of this Article; however, a Pipeline Company shall comply with the abandonment, Reclamation and decommissioning requirements for a Pipeline that is decommissioned on or after the effective date of this Article; (2) a Pipeline owned and operated by a public utility that is furnishing service to or supplying customers in the County; or (3) a Property Owner that has already executed an Independent Agreement with a Pipeline Company prior to the effective date of this Article.

25.102  If a Property Owner has executed an Independent Agreement prior to the effective date of this Article and the Independent Agreement does not meet the separation requirements of this Article, then notwithstanding the Independent Agreement, the Pipeline Company shall comply with the separation requirements of this Article.

25.103  If a Property Owner has executed an Independent Agreement prior to the effective date of this Article, and the Independent Agreement provides for separation requirements that are greater than the separation requirements this Article, then the Pipeline Company shall comply with the terms of the Independent Agreement with the Property Owner.

25.11  <u>Emergency Response and Hazard Mitigation Information for Hazardous Liquid Pipelines</u>

As stated in the Purposes section of this Article, this Article is intended to implement local zoning regulations in a manner designed to facilitate the comprehensive plan's goals and the County's objectives for assessing ongoing mitigation, evaluating mitigation alternatives, and ensuring there is a strategy for implementation. This goal is consistent with the County's legal obligation under Iowa Code chapter 29C to engage in emergency response and hazard mitigation planning and with the need to protect the health and welfare of both residents and emergency response personnel. For these reasons, the County requires Hazardous Liquid Pipelines to provide information to assist the County in its emergency response and hazard mitigation planning as required by Iowa Code chapter 29C. The requirement to provide emergency response and hazard mitigation information pursuant to this section is not intended to constitute a safety standard and is not intended to conflict with any PHMSA safety standards applicable to a Pipeline Company which regulate the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities.

25.111  If an Applicant for a permit pursuant to this Article is a Pipeline Company and if the proposed pipeline is a Carbon Dioxide Pipeline, then the Applicant shall provide the following information to the County for purposes of assisting the County with its emergency response and hazard mitigation planning efforts:

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 16 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 16 of 20   Exhibit A

a. A map and legal description of the proposed route for a Carbon Dioxide Pipeline showing all human occupied structures and animal husbandry facilities, by type, within two miles of the centerline of the proposed route including addresses.

b. A description of the health risks resulting from exposure of humans and animals to carbon dioxide released from a pipeline, considering the concentrations of carbon dioxide in the air near to a rupture, the duration in time of exposure, and the presence of other harmful substances released from a rupture. The description shall identify the exposure level and duration of time that may cause a fatality of persons or animals, and the exposure level and duration that may cause intoxication or other significant adverse health effects.

c. An estimate of the worst-case discharge of carbon dioxide released in metric tons and standard cubic feet from a rupture of a pipeline considering the interior volume of the pipeline, the location of emergency valves that limit release of carbon dioxide, the location of crack arrestors, operating pressures, operating temperatures, and other relevant factors.

d. A rupture dispersion modeling report containing the results of computational fluid dynamic computer model estimates of the maximum geographic ranges of the Fatality Zone and Hazard Zone for the Carbon Dioxide Pipeline in the event of its rupture in a range of weather conditions and representative topography in County, as well as in low elevation areas of the County where released carbon dioxide may settle.

e. A computer model report showing the Blast Zone for the Carbon Dioxide Pipeline.

f. A list of structures and facilities within the Hazard Zone, Fatality Zone, and Blast Zone for the proposed route of a Carbon Dioxide Pipeline that in the preceding year have contained humans or livestock, and an estimate of the numbers of persons and livestock in each structure and facility.

g. A list of High Consequence Areas. A High Consequence Area is any area within the Hazard Zone, the Fatality Zone, or the Blast Zone where a single rupture would have the potential to adversely affect 10 or more persons or a facility with 100 or more livestock.

h. A description of the potential adverse impacts of a rupture of a Carbon Dioxide Pipeline on the humans, livestock, and other real and personal property within the Hazard Zone, the Fatality Zone, and the Blast Zone for the route of a Carbon Dioxide Pipeline.

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 17 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 17 of 20   Exhibit A

i.  Identification of alternative routes through the County designed to minimize risks to humans and animals from a rupture of the Carbon Dioxide Pipeline with County, and an analysis of the risks of these alternative routes relative to the proposed route.

j.  All information needed by county first responders, emergency response personnel, and law enforcement personnel in order to engage in local emergency management and hazard mitigation planning, equipment, and training needs. Such information includes but is not limited to:
    1. a material data safety sheet for the materials transported in the Carbon Dioxide Pipeline;
    2. agency-specific response plans for law enforcement, emergency medical responders, and other response agencies;
    3. carbon dioxide detectors and evacuation plans for each human occupied structure;
    4. response equipment needs for emergency response personnel, such as carbon dioxide and other chemical detectors; respirators; personal protective equipment; communications equipment; road barriers and traffic warning signs; and non-internal combustion engine evacuation vehicles;
    5. a Carbon Dioxide Pipeline rupture emergency response training program to ensure safe and effective response by county and municipal law enforcement, emergency medical services, and other responders during the operational life of the Carbon Dioxide Pipeline.

k.  Identification of residential and business emergency response needs, including but not limited to:
    1. a Mass Notification and Emergency Messaging System;
    2. evacuation plans;
    3. evaluation equipment needs especially for mobility impaired individuals;
    4. carbon dioxide detectors, and respirators.

25.112  If an Applicant for a permit pursuant to this Article is a Pipeline Company and if the proposed pipeline is a type other than a Carbon Dioxide Pipeline, then the Applicant shall provide (1) a draft emergency response plan or facility response plan for the proposed pipeline; and (2) a detailed description of how the Pipeline Company will work with the County's law enforcement, emergency management personnel, and first responders in the event of a spill, leak, rupture, or other emergency or disaster related to pipeline.

25.113  The Board of Adjustment may include a condition in a Conditional Use Permit granted pursuant to this Article that requires an applicant to reimburse the County for all costs and expenses incurred for purposes of emergency response or hazard mitigation planning, equipment acquisition or repair, training, and communications if such costs and expenses are reasonably related to the Pipeline.

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx
Page 18 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 18 of 20   Exhibit A

25.12 <u>Abandonment, Discontinuance, and Removal of Hazardous Liquid Pipelines</u>

In addition to the requirements set by Iowa Code § 479B.32, a Hazardous Liquids Pipeline in the County that is abandoned shall comply with the requirements of this section. A Hazardous Liquid Pipeline shall be deemed abandoned for purposes of this section whenever the use of the Hazardous Liquid Pipeline has been discontinued such that there is no longer regulatory oversight of the Pipeline by PHMSA.

For purposes of the land restoration standards of Iowa Code § 479B.20, the term "construction" includes the removal of a previously constructed pipeline, and the County will treat the removal of a Pipeline in the same manner as the Pipeline's original construction for purposes of the County's obligations under Iowa Code chapter 479B.

25.121 A Pipeline Company granted a Conditional Use Permit pursuant to this Article shall by certified mail notify the County and all Affected Persons in the County of the Pipeline Company's intent to discontinue the use of the Pipeline. The notification shall state the proposed date of the discontinuance of use.

25.122 Upon abandonment or discontinuance of use, the Pipeline Owner shall offer to each Property Owner the option to have the Pipeline and all related facilities physically dismantled and removed, including both the below and above ground facilities. The removal of the Pipeline and the related Reclamation and Reclamation Costs shall be the Pipeline Company's responsibility and shall be completed within one-hundred eighty (180) days from the date of abandonment or discontinuation of use unless a Property Owner agrees to extend the date of removal. Such an extension must be by written agreement between the Pipeline Company and the Property Owner, and the agreement shall be filed at the Kossuth County Recorder's office and a copy delivered to the County by the Pipeline Owner.

25.123 A Property Owner shall not be required to have the Pipeline removed, but if the Property Owner agrees to the removal and Reclamation, the Property Owner shall allow the Pipeline Company reasonable access to the property.

25.124 Upon the removal of the Pipeline and the Reclamation, the Pipeline Owner shall restore the land according to the requirements of Iowa Code § 479B.20 and the rules adopted thereunder at 199-9.1(479,479B), including all amendments thereto.

SECTION 5.   REPEALER. All ordinances or parts of ordinances in conflict with the provisions of this ordinance are hereby repealed.

SECTION 6.   NON-SUBSTANTIVE CORRECTIONS. All mistakes, typographical errors, numbering errors, formatting problems, and all similar non-substantive issues may be corrected by the County and included in the final version of the Zoning Ordinance when it becomes effective.

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 19 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 19 of 20

Exhibit A

SECTION 7.   SEVERABILITY CLAUSE. If any section provision or part of this Ordinance shall be adjudged invalid or unconstitutional such adjudication shall not affect the validity of the ordinance as a whole or any section, provision or part thereof not adjudged invalid or unconstitutional.

SECTION 8.   WHEN EFFECTIVE. This ordinance shall be in effect from and after its final passage, approval, and publication as provided by law.

|  |  |
|---|---|
| First Reading Passed: | November 21, 2023 |
| Second Reading Passed: | December 5, 2023 |
| Third Reading Passed: | December 12, 2023 |

_____
Kyle Stecker
Chairperson, Kossuth County Board of Supervisors

ATTEST:

_____
Tammy Eden, Kossuth County Auditor

Z:\Plan and Zone Ordinances\P & Z Ordinance\Pipeline Regulation Ordinance Amendment (proposed)\Establish\20231212 Zoning Amendment Regulating Pipelines Final Version to Publish.docx

Page 20 of 20

Case 3:24-cv-03002-LTS-MAR   Document 1-1   Filed 01/02/24   Page 20 of 20

Exhibit A